UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ATLAS INTERNATIONAL MARKETING, LLC, a Nevada limited liability company,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAR-E DIAGNOSTICS, Inc., a Texas corporation; CHIN-YANG SUN, an individual,<br><br>　　　　Defendants. | Case No.: 5:13-CV-02664-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION**<br><br>**[Re: Docket No. 13]** |

Presently before the Court is Car-E Diagnostics, Inc. ("Car-E" or "Plaintiff") and Chin-Yang Sun's (collectively, "Defendants") Motion to Dismiss and Compel Arbitration. Having reviewed the parties' submissions, the Court found this matter appropriate for decision without oral argument and vacated the hearing date. Civil L.R. 7–1(b).   For the reasons explained below, Defendant's motion is GRANTED IN PART AND DENIED IN PART.

1

## I. BACKGROUND

The following facts are taken from Plaintiff's First Amended Complaint ("FAC"), Docket No. 8.

Plaintiff Atlas International Marketing ("AIM") is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business in the State of Idaho. FAC ¶ 1. Defendant Car-E Diagnostics, Inc. is a corporation organized and existing under the laws of the State of Texas and doing business in the State of California. FAC ¶ 2.

Between 2008 and present, Plaintiff has been developing a process by which the automotive industry can certify used vehicles by obtaining the most accurate current condition information available. FAC ¶ 6. The process involves an efficient means of obtaining a vehicle's current condition, and vehicles that meet Plaintiff's criteria are certified and qualify for a limited warranty, which dealers or auctions can then transfer with the vehicle when sold. Id. The certification process, which includes a limited warranty, was created as a tool for auto auctions and dealers to use to improve margins, build trust with customers, and increase transparency in the used vehicle sales process. Id.

In or about 2001, the U.S. Patent and Trademark Office issued Defendant Chin-Yang Sun a certain patent, patent number 6,240,329, which patent relates to certain software used in the testing of vehicles with an on-board diagnostic port (the "Patent"). FAC ¶ 7. In 2009, Defendant Chin-Yang Sun established Car-E for the purpose of marketing and selling products and services related to the Patent (the "Car-E Products and Services"). Id.

The basic concept of the Car-E Products and Services is as follows: 1) The provider of the Car-E Products and Services (the "Service Provider") must acquire certain hardware, including a laptop computer and connections that link the computer to the vehicle being tested (the "Machine"). Id. 2) The Service Provider pays Defendants a certain amount per vehicle tested, or can opt for unlimited monthly tests for a flat fee per Machine per month. Id. 3) The Service Provider tests used vehicles using the Machine, which produces a report on the current internal

2

Case No.: 5:13-CV-02664-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

1     condition of the tested vehicle. Id. The report is generated through Defendants' software located
2     on Defendants' servers. Id.
3         From 2001 through June 2012, Defendants Chin-Yang Sun and Car-E attempted to market
4     and sell the Car-E Products and Services, but were largely unsuccessful. FAC ¶ 8. In spring 2012,
5     Plaintiff contacted Defendant Chin-Yang Sun to discuss a strategic partnership. Id. On or about
6     April 9, 2012, the parties entered into a mutual non-disclosure agreement ("NDA"). Id.
7     Thereafter, Defendant Chin-Yang Sun informed Plaintiff about the Car-E Products and Services in
8     more detail, and informed Plaintiff that it had no active customers and had never made any
9     significant revenue from the Car-E Products and Services. Id. The parties entered into a strategic
10    partnership to market and sell Plaintiff's certification process, which incorporates the Car-E
11    Products and Services. Id.
12        Following the execution of the NDA, through one of its strategic agent relationships,
13    Plaintiff began working on a sizeable agreement with ADESA, the nation's second largest auto
14    auction. FAC ¶ 9. ADESA auctions approximately 7.7 million vehicles per year, which equates to
15    approximately twenty five percent (25%) of all auctioned vehicles in the United States. Id.
16        After meeting with ADESA's key executives at its corporate headquarters, ADESA entered
17    into an agreement with AIM, which initiated a pilot program utilizing the process developed by
18    AIM after entering in the NDA with Car-E. FAC ¶ 10. The pilot program was proceeding better
19    than expected and ADESA was ready to move into the rollout phase of the agreement in early June
20    2013. Id. However, shortly after AIM and ADESA began discussing the terms of the rollout,
21    ADESA stopped utilizing the process and stated it did not want to use the process anymore. Id.
22    This did not make sense to AIM until it learned of Defendant Chin-Yang Sun's actions. Id.
23    During late May and early June 2013, Plaintiffs became aware of each of the following:
24        a. Defendant Chin-Yang Sun has contacted several of the "players" in this deal and
25        complained that he was not making any money on the ADESA deal. Id.
26        b. Defendant Chin-Yang Sun contacted several of the "players" in the ADESA deal and
27        stated that Plaintiff is making $60 per vehicle in an effort to cut Plaintiff out of the deal. Id.
28

3

Case No.: 5:13-CV-02664-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS AND COMPEL ARBITRATION

United States District Court
For the Northern District of California

    c. Defendant Chin-Yang Sun has been working with ADESA on a strategy to bypass Plaintiff in this deal by having ADESA cancel the program and then enter into a deal directly. Id.

    d. One of Plaintiff's strategic partners informed Plaintiff that he was told the ADESA deal is going forward, but it will be done without Plaintiff's involvement. Id.

Around the same time, Plaintiff recalled that Defendant Chin-Yang Sun had installed a software program on one of Plaintiff's computers, which computer was used by one of Plaintiff's members, Joseph Perez. FAC ¶ 11. The software, Hamachi, is a tunneling software that allows a user to "tunnel" into the computer remotely. Id. Defendant Chin-Yang Sun installed the Hamachi software on Mr. Perez's computer, and assured Mr. Perez that the software was only able to allow Mr. Perez to view the Machines that Plaintiff acquired from Defendants. Id. However, on June 6, 2013, between 7:50 a.m. and 9:01 a.m., Mr. Perez had an email exchange with a potential customer and strategic partner, which strategic partner informed Mr. Perez that everything was going well with the relationship and program. Id. Approximately two hours later, Defendant Chin-Yang Sun called the same individual that Mr. Perez had been emailing, and told this individual that Plaintiff and Defendants were having "big problems." Id. When Mr. Perez became aware of this incident about an hour later, he believed that Defendant Chin-Yang Sun had, in fact, installed the Hamachi software on his computer in a way that allowed Defendant to access Mr. Perez's personal information and Plaintiff's confidential business information. Id. After investigating this further, Plaintiff learned from a third party IT professional that the installation of the Hamachi software gave Defendant Chin-Yang Sun secret remote access to Mr. Perez's computer. Id.

Access to Mr. Perez's computer provided Defendant Chin-Yang Sun with highly sensitive and confidential information. FAC ¶ 12. The information obtained by Defendants includes, but is not limited to, Plaintiff's strategic agent relationships, pricing models, marketing strategies, industry contacts, and personal and business financial data. Id. Plaintiff alleges that the information was used to Defendants' advantage and for the purpose of sabotaging the deal with ADESA. Id.

Since Defendant Chin-Yang Sun's disclosure of confidential and/or false information to ADESA, ADESA has refused to proceed with utilizing AIM's process and is demanding a drastically lower cost if it decides to use the process, which cost is a more than 90% reduction from what it paid during the pilot period. FAC ¶ 13.

## II. LEGAL STANDARD

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the avoidance of any contract." 9 U.S.C. § 2. "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)). Accordingly, a court's role is limited to determining: (1) whether the parties agreed to arbitrate and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. Id. If the party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130.

If a contract contains an arbitration clause, the clause is presumed valid (AT & T Techs., Inc. v. Comm'ns Workers of America, 475 U.S. 643, 650 (1986)) and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1139 (9th Cir. 1991)). Thus, the party opposing arbitration has the burden of showing that an arbitration clause is invalid or otherwise unenforceable. Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 972 (1997).

## III. DISCUSSION

### a. Request for judicial notice of the Distributor Agreement

The only contract explicitly referenced in the FAC is the NDA, which does not have an arbitration clause or otherwise provide for the arbitration of disputes. Defendants request judicial notice of a document entitled "Distributor Agreement." Docket No. 14. Unlike the NDA, the Distributor Agreement contains an express arbitration clause.

5

Plaintiff contends that the Court may not consider the Distributor Agreement for the purposes of this motion because the FAC does not make reference to it. However, on a motion to compel arbitration, a court "may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)); see also King v. Hausfeld, 2013 WL 1435288 (N.D. Cal. Apr. 9, 2013).

A review of Plaintiff's opposition brief, Docket No. 20, confirms that Plaintiff does not contest the validity of the Distributor Agreement, only the scope of the arbitration clause and its application to the FAC. Thus, the Distributor Agreement is a "document of uncontested validity" and the Court may consider it in deciding this motion. Defendants' request for judicial notice is GRANTED.

### b. Scope of the arbitration clause

Federal substantive law governs the question of arbitrability. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999) (internal citations omitted). The FAA reflects Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause. Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 475 (9th Cir. 1991) (citing Perry v. Thomas, 482 U.S. 483, 490 (1987)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

The Distributor Agreement's arbitration clause states, in part:

> If a dispute arises out of or relates to this contract or the breach thereof and if the dispute cannot be settled through negotiation, the Parties agree first to try in good faith to settle the dispute by mediation. If mediation is unsuccessful, any controversy or claim arising out of or relating to this contract shall be determined by arbitration in accordance with the Commercial Rules of the American Arbitration Association.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T, 475 U.S. at 648 (quoting

6

Case No.: 5:13-CV-02664-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

1  Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).  Thus, Plaintiff's
2  claims are arbitrable only if they are "related to" the Distributor Agreement.  The FAC makes no
3  reference to the Distributor Agreement, and Plaintiff maintains that its claims are based on
4  Defendants' allegedly tortious disclosure of confidential and trade secret information rather than on
5  any right or obligation derived from the Distributor Agreement.

6       Having carefully reviewed the FAC and the relevant case law, the Court finds that all of
7  Plaintiff's claims are arbitrable.  The Court finds significant factual similarities between Plaintiff's
8  claims and the trade secrets-related claims brought by the plaintiff in Simula.  In that case, Simula
9  alleged that defendant Autoliv, "by wrongfully using confidential information to manufacture
10  Autoliv's competing inflatable curtain, breached the May 1993 nondisclosure agreements,
11  misappropriated trade secrets, and violated the Arizona Uniform Trade Secrets Act."  175 F.3d at
12  724.  Simula relied upon the violation of the May 1993 nondisclosure agreements as the basis for
13  its misappropriation of trade secrets claim.  Id.  A 1995 Agreement between the parties contained
14  three arbitration clauses, which required the arbitration of any disputes "arising in connection" with
15  the 1995 Agreement.  Id. at 720-721.  The Court of Appeals construed the "arising in connection
16  with" language to mean "every dispute between the parties having a significant relationship to the
17  contract and all disputes having their origin or genesis in the contract."  Id. at 721.

18       The Court of Appeals held that the trade secrets-related claims were subject to arbitration,
19  finding it relevant that the nondisclosure agreements were a "key part" of the 1995 Agreement
20  through an integration clause, and the entire business relationship between the parties was
21  dependent, in part, on the rights and obligations under the nondisclosure agreements and reaffirmed
22  by the 1995 Agreement.  Id. at 725.

23       Plaintiff distinguishes the instant case from Simula by contending that the Distributor
24  Agreement's integration clause contains language that indicates that the parties did not intend to
25  incorporate the NDA's provisions into the Distributor Agreement.  The Distributor Agreement's
26  integration clause states (emphasis added):

27
28
                                                                         7
Case No.: 5:13-CV-02664-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS AND COMPEL ARBITRATION

United States District Court
For the Northern District of California

> This Agreement represents the entire agreement of the parties hereto with respect to its subject matter.  It may be modified or amended only by a written instrument executed by the parties hereto.  There have been no representations, warranties or promises outside of this Agreement relating to the subject matter hereof, except those specified herein.  This agreement shall take precedence over any other documents that may be in conflict with it.  <u>Notwithstanding the foregoing, the parties' Mutual Nondisclosure and Non-Competition Agreement shall continue in effect.</u>

The emphasized line, argues Plaintiff, has the effect of "carving out" the NDA from the integration clause in the Distributor Agreement and shows that the parties specifically agreed to maintain the separateness of the two agreements.  Plaintiff also points out different law applies to each contract (Texas law to the Distributor Agreement, California law to the NDA).

However, even accepting that the Distributor Agreement and the NDA are wholly separate contracts, they are still "related to" one another because they both govern the business relationship between Plaintiff and Defendants.  The NDA describes its provisions as connected "with the discussion and information of mutual business engagements and potential business opportunities between [the parties]."  The fact that the integration clause specifically identifies the NDA should strengthen, not diminish, the conclusion that both agreements are related to the same subject matter: the parties' business relationship.

Each cause of action alleged by the FAC is predicated on Defendants' alleged theft and wrongful use of confidential information stored on Plaintiff's computers, information that is described as "Plaintiff's strategic agent relationships, pricing models, marketing strategies, industry contacts, and personal and business financial data."  FAC ¶ 12.  Because all of Plaintiff's claims are based on the theft and wrongful use of information that is related to the same business relationship that is governed by the Distributor Agreement, the entire dispute is subject to arbitration.

### c. Mediation

The arbitration clause provides that, prior to arbitration, the parties are to first "try in good faith to settle the dispute by mediation." Plaintiff alleges that Defendants refused a number of requests to mediate and that such refusal amounts to a breach or a failure of a condition precedent, thus rendering the clause unenforceable.

However, Plaintiff cites no authority that would compel such a result, and the allegations regarding Defendants' failure to mediate appear for the first time in Plaintiff's opposition to the instant motion. Furthermore, it is unclear whether the clause requires the parties to mediate before or after a complaint is filed. The Court resolves any doubt in favor of arbitration.

### d. Attorney's fees

Defendants argue that they are entitled to attorney's fees under a provision in the Distributor Agreement stating:

> Should either Party hereto initiate a legal or administrative action or proceeding (an "Action") to enforce any of the terms or conditions of this Agreement, the prevailing Party (as determined by the court or other fact-finder) shall be entitled to recover from the losing Party all actual costs of the Action, including without limitation attorneys' fees and reasonable legal costs.

However, Plaintiff's complaint seeks relief under the NDA and various common law and statutory causes of action; it is not an action "to enforce any of the terms or conditions of [the Distributor Agreement]." Defendants' request for attorney's fees is denied.

### e. Dismissal

Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Ninth Circuit, however, has held that courts have discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement. See Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988); Lewis v. UBS Fin. Servs. Inc., 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011).

9

Case No.: 5:13-CV-02664-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION

Since all the claims in this action are subject to arbitration, dismissal is appropriate.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and Compel Arbitration is GRANTED IN PART AND DENIED IN PART.  The Motion is denied to the extent it seeks attorney's fees.  The case is dismissed with prejudice and the Clerk shall close the file.

**IT IS SO ORDERED**

Dated: July 9, 2014



EDWARD J. DAVILA
United States District Judge

10

Case No.: 5:13-CV-02664-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION